[Crim. No. 6552. In Bank. Feb. 29, 1960.]

THE PEOPLE, Respondent, v. GILBERT LEHO KIIHOA, Appellant.

Earl Klein, under appointment by the Supreme Court, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

WHITE, J.—Gilbert Leho Kiihoa appeals from a judgment of conviction of violation of section 11500 of the Health and Safety Code (sale of narcotics).

On April 23, 1958, a deputy sheriff assigned to the narcotics detail, and one Robert Stough, a confidential informant, were seated in a café when the defendant and Frank Leyva, a known narcotics peddler, entered. The officer testified that after Stough spoke to the defendant, the latter joined Stough and the officer in the restroom, where the defendant stated that Leyva did not want to deal with them directly; that Leyva would deal with them only through the defendant; that a gram of "junk" would cost $17; that the money should be paid to the defendant who would deliver it to Leyva and return with the "junk" to the officer. The officer gave the defendant $17, who then inquired whether the officer and Stough "wanted to fix there." The officer replied that they did not have their "outfit" and would wait in their car for the defendant's return. After five or ten minutes the defendant entered the officer's vehicle and delivered a package which, upon analysis, was found to contain heroin. Two days later the officer saw the defendant again, and the latter solicited the officer's future patronage. Other officers observed the foregoing events, but the observer on April 23 was not near enough to make a positive identification of the defendant.

The defendant was first arrested for the alleged violation, without a warrant, on July 16, 1958, by a police officer who had taken no part in the foregoing transaction. No charges were filed against the defendant at that time, and he was released after being held for 51 hours. The defendant then filed a civil action for false arrest based on that detention. Thereafter charges were filed against the defendant, alleging the incident of April 23, and he was rearrested on September 29, 1958, and brought to trial.

The prosecution, in an attempt to explain the circumstances of the defendant's arrests, produced a police officer who testi-

fied that the defendant was released because it would be necessary to divulge the identity of the informant if they proceeded to trial; that Stough (the informant) had been intimidated and did not wish to be identified, and that it was established policy not to prosecute in these circumstances. This witness was informed, however, that after the defendant's release Stough had left the State of California. That being the case, and it appearing that Stough might then be identified without subjecting him to reprisals, the accused was rearrested and brought to trial.

The defendant contends that his first arrest was illegal; that he was subjected to double jeopardy; that he was entrapped; that the case for the prosecution was inherently improbable, and that he was denied a fair trial. As the judgment of conviction must be reversed on the last ground mentioned, the merit, if any, in the other contentions need not be considered.

As noted, the first arrest was not made until almost three months after the alleged violation, and the final arrest more than two months later. ██ The defendant testified that he did not know the alleged informant and had never seen the deputy sheriff who participated in the alleged transaction until the preliminary hearing, thus putting in issue the credibility of the deputy's testimony. In these circumstances it could not be, and is not, contended that Stough is not a material witness. (See *People* v. *Williams,* 51 Cal.2d 355, 359-360 [333 P.2d 19].) Accordingly, the privilege of refusing to identify Stough as an informer (Code Civ. Proc., § 1881, subd. 5), could not have been properly asserted. (*People* v. *Durazo,* 52 Cal.2d 354 [340 P.2d 594]; *People* v. *Williams, supra,* 51 Cal.2d 355; *Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39]; *People* v. *McShann,* 50 Cal.2d 802 [330 P.2d 33].) In the Durazo, Williams and McShann cases it was held that the prosecution is required to disclose the informer's name or dismiss the case, on proper application by the defendant to the court. In none of the cases referred to, however, was the question of production of and confrontation by the defendant before the court. In the present case the informant's identity was voluntarily disclosed, and in response to the defendant's motion for the production of Stough, the district attorney answered that "His name has been divulged and his last known whereabouts has been divulged. I believe that is as far as the cases ruling on the subject go." The motion was denied.

752

The right of an accused to be confronted with witnesses is the right to have witnesses who testify do so in the presence of and subject to cross-examination by the defendant. The prosecution is not required to call any particular witness, nor to put on all the evidence relating to a charge so long as all material evidence bearing thereon is fairly presented in such a manner as to accord to the defendant a fair trial. (*People* v. *Tuthill,* 31 Cal.2d 92, 98 [187 P.2d 16]; *People* v. *Parry,* 105 Cal.App.2d 319 [232 P.2d 899].) The narrow question in the present case is whether the concept of a fair trial has been denied where the prosecution is allowed to arrange to withhold prosecution of a suspect during such time as a material witness might be available, and proceed to trial only when that witness is believed to be out of the jurisdiction and not available to testify.

The intentional suppression of material evidence by the state would, of course, be a denial of a fair trial and due process. This could, in some circumstances, be manifest by a failure of the prosecution to call certain witnesses. (*Curtis* v. *Rives,* 123 F.2d 936, 938 [75 App. D.C. 66]; *cf. Mooney* v. *Holohan,* 294 U.S. 103 [55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406].) Such a denial would likewise exist where the prosecution was allowed to control the course of proceedings in a manner which would prevent the accused from presenting material evidence. The rule requiring the disclosure of the identity of an alleged informer is designed to prevent such injustices. The rationale of that rule is that the defendant, through the testimony of the informer when his identity is made known, might be able to rebut a material element of the prosecution's case and thereby prove his innocence. The denial by the prosecution of an opportunity for the defendant to seek out the informer and to defend by these means, where the testimony of the informer would be material to the issues, is unfair and oppressive to the defendant, and deprives him of due process of law. (See *Roviaro* v. *United States,* 353 U.S. 53, 63-64 [77 S.Ct. 623, 1 L.Ed.2d 639]; *People* v. *McShann, supra,* 50 Cal.2d 802, 809, 810.)

Admittedly, in the case now engaging our attention, the prosecution, in accordance with what the deputy sheriff characterized as ''established policy,'' chose to release the accused and to defer prosecuting him for some five months and until the informer had departed from the State of California, thereby rendering himself immune from the process of the court to obtain his presence at the trial. To us this

appears to manifest an intention to avoid the very purpose of the disclosure rule.

"It is the duty of the district attorney, not to obtain convictions, but to fully and fairly present to the court the evidence material to the charge upon which the defendant stands on trial and it is the solemn duty of the trial judge to see that the facts material to the charge are fairly presented and the constitutional guarantees of a defendant neither violated nor infringed." (*People* v. *Sheffield*, 108 Cal.App. 721, 732 [293 P. 72].) The right of an accused to a fair trial, conducted substantially according to law, is at the same time the right of every person to protection against procedures which might illegally deprive him of life or liberty. "It is an essential part of justice that the question of guilt or innocence shall be determined by an orderly legal procedure, in which the substantial rights belonging to defendant shall be respected." (*People* v. *O'Bryan*, 165 Cal. 55, 65 [130 P. 1042].) The frankness of the prosecution witnesses in admitting that they first arrested, then released and re-arrested the defendant in order to avoid the necessity of identifying the informer Stough at the time when the defendant could have procured Stough's attendance at the trial and have elicited testimony from him, would seem to point unerringly to the conclusion that the state sought to circumvent, if not to stultify, the reason for the rule requiring disclosure. The procedure resorted to in the instant case manifestly denied the defendant a fair trial just as effectively as if the informer had never been identified.

It is next contended that because there was no procurement of or active participation by the law enforcement agency in Stough's removal from the jurisdiction there was no state action which deprived the defendant of due process of law. The record does indicate that the police did not arrange for Stough's absence. The critical question, however, is not necessarily one of improper conduct in bringing about Stough's absence, but rather, whether the defendant's conviction resulted from some form of trial in which his essential rights were disregarded or denied. We are persuaded that the circumstances surrounding this prosecution affected and militated against the defendant's right to a fair and impartial trial.

We are not unmindful of the ever increasing burden on law enforcement agencies in their continuing endeavor to stamp out the illicit and vicious narcotic traffic. (See dissent of

Shenk, J. in *People* v. *Durazo, supra,* 52 Cal.2d 354, 358-359 [340 P.2d 594].) They must be allowed a reasonable rein in order to adequately protect the public interest. But in the particular circumstances of the case at bar we cannot be indifferent to the resulting denial of the defendant's substantial rights, however praiseworthy was the prosecution's motive in protecting the informer from the threat of reprisal. Such motives and purposes cannot prevail when, as here, they inevitably result, intentionally or unintentionally, in depriving the defendant of a fair trial. It has been said that the basic issue lies in a balance of the public interest in protecting the flow of information against the individual's right to prepare his defense. (*Roviaro* v. *United States,* 353 U.S. 53, 62 [77 S.Ct. 623, 1 L.Ed.2d 639].) In the present circumstances that issue must be resolved in favor of the preservation of individual rights.

It is not intended to hold that the mere unavailability of a material witness would necessarily result in a denial of due process in every case. We do not reach that question where, as here, the deprivation of due process was admittedly occasioned by state action. The judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., and Peters, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons stated by Mr. Justice Herndon in the opinion prepared by him for the District Court of Appeal in *People* v. *Kiihoa* (Cal.App.), 342 P.2d 981.

Spence, J., concurred.

Respondent's petition for a rehearing was denied March 30, 1960. Spence, J., and McComb, J., were of the opinion that the petition should be granted.