Ernest L. Signorelli, J.
Upon completion of the testimony at a jury trial, the defendant, requesting a trial order of dismissal, moved to dismiss the indictment. The basis for the motion was the People’s refusal to disclose the identity of a confidential informant after the court had overruled the People’s objection to the disclosure.
The indictment herein charges the defendant with criminally selling a dangerous drug in the third degree and criminal possession of a dangerous drug in the sixth degree in that the defendant, Walter Lee Casiel, allegedly sold a quantity of heroin on November 8, 1971, to Joseph Avella, a detective assigned to the Narcotics Squad of the Suffolk County Police Department.
In order to prove that the defendant committed these crimes, the People called as witnesses Detective Avella and Detective De Rosa. Detective Avella was the main prosecution witness since it was he who allegedly bought the heroin from the defendant while Detective De Rosa witnessed the transaction.
Detective Avella testified that he had an appointment to meet the defendant in order to purchase drugs on November 8, 1971, at 8:30 p.m. in the evening in front of Brad’s Bar, Easthampton, New York. He further testified that he arrived a few minutes prior to the appointed hour and proceeded to enter Brad’s Bar. While in the bar, he saw a man and woman, spoke to the woman who appeared to him to be a patron and then went back outside to wait for the defendant. The defendant arrived shortly thereafter and, while being observed by Detective De Rosa, presumably sold to Detective Avella 15 bags of heroin for $50.
Defense counsel’s cross-examination of Detective Avella revealed the fact that the appointment had been arranged by a confidential informant. In fact, Detective Avella testified that the confidential informant had introduced the defendant to him on a prior occasion. Defense counsel thereupon requested that the People disclose the identity of the confidential informant and the People have strenuously resisted the granting of this relief.
The People’s objection to disclosure is based upon the well-established government privilege to withhold the identity of a *679 confidential informant. (Roviaro v. United States, 353 U. S. 53; Scher v. United States, 305 U. S. 251; Matter of Quarles & Butler, 158 U. S. 532; People v. Malinsky, 15 N Y 2d 86; 8 Wigmore, Evidence [McNaughton Rev.], § 2374.) “ The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.” (Roviaro v. United States, supra, p. 59). The privilege, however, is not unlimited. In the Roviaro case, the Supreme Court said, “ The scope of the privilege is limited by its underlying purpose * * * A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer’s identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. ’ ’ ’ (Roviaro v. United States, supra, pp. 60-61). The New York rule is that “ the government’s privilege of nondisclosure of the identity of informants is limited by the ‘ fundamental requirements of fairness ’ and must give way where ‘ its assertion would seriously prejudice the defense 1 ‘ by making a fair hearing impossible ” ’ ”. (People v. Cerrato, 24 N Y 2d 1, 6-7.)
Essentially, the decision to reveal the name of the informant rests in the sole discretion of the Trial Judge, and it is the Trial Judge’s responsibility to balance the public interest against the defendant’s right to prepare his defense and to be accorded a fair trial. (Roviaro v. United States, supra.)
It is the defendant’s position in this trial that he is innocent of any wrongdoing, that he never, in fact, sold the heroin to Detective Avella on the day in question, November 8, 1971, and that, in effect, the detectives have lied and are framing him for a crime he did not commit. In support of his position, the defendant called as a witness the proprietor of Brad’s Bar, who testified that on Monday, November 8,1971, his place of business was closed. In fact, he brought with him certain business records that indicated his place of business was always closed on Mondays. To further support his contentions, the defendant called to the stand, Mrs. Smith, who testified that on January 28,1972, the defendant and four other persons were arrested at her home, and that during the course of the arrests, she overheard one of the arresting detectives say that the defendant was “ clean ” *680 to which another detective replied to bring him in anyway and we will ‘ ‘ put something on him. ’ ’ The defendant also introduced into evidence two lower court informations charging defendant with this crime. The first information, filed on the night of the defendant’s arrest along with four other persons, indicates the crime was committed on January 28, 1972. A second and superseding information filed a month later indicates the crime occurred on November 8, 1971, as charged in the indictment. In short, the defendant throughout this entire trial has endeavored to show that the incident in question could never have occurred on the day and in the manner alleged by the undercover detectives of the Narcotics Squad.
* ‘ When the name of the informer is requested, it becomes the duty of the trial Judge to conduct an examination of the attendant facts and circumstances before making a determination as to whether or not the accused may be accorded a fair trial without the request being granted.” (8 Wigmore, Evidence [McNaughton Rev.], § 2374, p. 765). In view of the state of this record, and endeavoring to establish a proper balance between the public interest and the defendant’s right to a fair trial, the court then directed that a qualified disclosure of the informant’s identity be made. In effect, I requested the prosecutor to produce the informant for an in, camera examination with a court reporter present to record his sworn testimony. It was the further order of the court that said record of the in camera examination be sealed and kept secret pending further order of this court or an appellate court. Incidentally, there is precedent for this procedure in this jurisdiction and it has been sanctioned in other jurisdictions as well. (Jencks v. United States, 353 U. S. 657, 676, concurring opn. Justice Burton ; United States v. Day, 384 F. 2d 464, concurring opn. Judge McLaughlin; United States v. Jackson, 384 F. 2d 825; United States v. Lloyd, 400 F. 2d 414; United States v. Winters, 420 F. 2d 523; United States v. Hurse, 453 F. 2d 128; People v. Green, 69 Misc 2d 23; People v. Ducz, 68 Misc 2d 324.)
. The designed purpose of the in camera examination is to discover the following: (a) to determine whether or not the informer does exist, and if he does, whether or not he is still assisting the authorities; (b) whether the testimony elicited ip the in camera examination tends to corroborate the testimony of the undercover narcotics agent at the trial, and finally (c) whether any information elicited from the informant would be essential to a fair trial of this case, and would serve the interests of justice.
*681 Rule 510 (subd. [c], par. [3]) of the Rules of Evidence for the United States District Courts (draft of September, 1971), provides for an in camera proceeding pertaining to the identity of an informant and that section .states in pertinent part: “ If information from an informer is relied upon to establish the legality of the means by which evidence was obtained * * * he [the judge] may require the identity of the informer to be disclosed. The judge may permit the disclosure to be made in camera or make any other order which justice requires.” (51 F. R. D. 378).
While the said rule has not yet been adopted, the court apparently does have the inherent power to conduct this type of in camera proceeding. The Advisory Committee’s notes to this rule include the following comments: “ The hearing in camera which the rule permits provides an accommodation of these conflicting interests. United States v. Jackson, 384 F. 2d 825 (3rd Cir. 1967). The limited disclosure to the judge avoids any significant impairment of secrecy, while affording the accused a substantial measure of protection against arbitrary police action. The procedure is consistent with McCray and the decisions there discussed.” (51 F. R. D. 380).
Prior to the People’s compliance with the court’s request, I examined Detective Avella out of the presence of the jury. In said examination, he indicated that he and the Narcotics Squad had been out of contact with the informant for the past several months.
Upon the People’s compliance with the court’s direction, I did, in fact, conduct an in camera examination of the informant. In comparing the in camera testimony of the informant with the trial testimony of Detective Avella, the court determined that the following inconsistencies existed:
(1) Detective Avella testified that on November 8,1971, when this transaction was allegedly consummated, the confidential informant was not present nor was he anywhere near the place where the crime took place. The confidential informant, on the other hand, maintains that he was present in Brad’s Bar on the night in question, and that he met with the detective and the defendant in Brad’s Bar, and that thereafter he sent the defendant out to meet the detective where presumably the transaction took place. In fact, he recalls that after the transaction took place, the defendant walked back into the bar and indicated that he had conducted “his business ” and .showed him the sum he had realized, i.e., $50.
*682 (2) Detective Avella testified that this crime was committed on November 8, 1971, outside of the premises of Brad’s Bar and that prior to meeting with the defendant, he entered Brad’s Bar which was open and spoke to one of the patrons. The informant, on the other hand, positively asserts that the occurrence could not have taken place on November 8,1971, a Monday, because Brad’s Bar is closed on Mondays.
It then became abundantly clear that the outcome of this trial would hinge on the issue of Detective Avella’s truth and veracity. In fact, the defendant’s entire defense is predicated upon demonstrating to the jury that Detective Avella lied on the witness stand. Bearing this in mind, I concluded that the informant’s in camera testimony could be relevant and helpful to the accused’s defense. It is not necessary for an informant to be a participant or an eyewitness to the alleged crime for his testimony to be material and relevant to the accused’s defense. (People v. McShann, 50 Cal. 2d 802; People v. Williams, 51 Cal. 2d 355; People v. Garcia, 67 Cal. 2d 830.) “No one knows what the undisclosed informer, if produced, might testify. He might contradict or persuasively explain away the prosecutor’s evidence. It is the deprival of defendants’ opportunity of producing evidence which might result in their exoneration which constitutes the error in this case, and we cannot assume because the prosecution evidence may seem strong that the undisclosed evidence might not prove sufficient to overcome it in the minds of the jurors.” (People v. Castiel, 153 Cal. App. 2d 653, 659). In the Scher case, the Supreme Court said ‘1 public policy forbids disclosure of an informer’s identity unless essential to the defense, as for example, where this turns upon an officer’s good faith.” (Scher v. United States, 305 U. S. 251, 254, supra). Under these circumstances, the court feels the defendant should have the opportunity to interview the informant so that he may determine whether the testimony of the informant could possibly assist him in proving his innocence. In the court’s opinion, disclosure of the identity and communication of the informant would he necessary for a fair determination of the issues in this case in that it would provide to the defendant evidence tending to impeach the credibility of the detective. In view of the foregoing, I accordingly overruled the People’s objection to the disclosure of the informant’s identity. (Roviaro v. United States, 353 U. S. 53, supra; Scher v. United States, supra; People v. Malinsky, 15 N Y 2d 86, supra; People v. Cerrato, 24 N Y 2d 1, supra.)
*683 The prosecutor thereupon exercised his executive privilege of nondisclosure and elected not to reveal the identity of the informant. After both sides rested, the defendant then moved to dismiss the indictment.
The court must now determine whether the defendant’s motion to dismiss is an appropriate remedy under these circumstances. Dismissing the action upon the government’s refusal to disclose the identity of a confidential informant is a remedy sanctioned by many courts. (Roviaro v. United States, supra; Jencks v. United States, 353 U. S. 657, supra; United States v. Coplon, 185 F. 2d 629; United States v. Andolschek, 142 F. 2d 503; Cochran v. United States, 291 F. 2d 633; People v. Kiihoa, 209 Cal. App. 2d 196; Miller v. United States, 273 F. 2d 279, cert, den. 362 U. S. 928; People v. McShann, 50 Cal. 2d 802, supra; DeLosa v. Superior Court of San, Francisco, 166 Cal. App. 2d 1.)
Dismissal is required because to do otherwise would deprive defendant of a fair trial and violate his due process rights. The defendant cannot adequately prepare his defense in those cases where the confidential informant may be helpful and the People refuse to disclose his identity. In this regard, the Supreme Court in Roviaro v. United States (353 U. S. 53, 64, supra) said “ the desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide.”
In Jencks v. United States (supra, p. 672) the Supreme Court held “ the criminal action must be dismissed when the Government, on the ground of privilege, elects not to comply with an order to produce, for the accused’s inspection and for admission in evidence, relevant statements or reports in its possession of government witnesses touching the subject matter of their testimony at the trial. (Accord, Roviaro v. United States, 353 U. S. 53, 60-61.) The burden is the Government’s, not to be shifted to the trial judge, to decide whether the public prejudice of allowing the crime to go unpunished is greater than that attendant upon the possible disclosure of state secrets and other confidential information in the Government’s possession.”
According to the authority contained in Roviaro v. United States (supra), I am dismissing the indictment in the interests of justice. If the People feel aggrieved by this decision, they now have the right to seek redress in the appellate court and since the question posed herein appears to be one of first impression in the State of New York, I would urge the People to appeal the order of this court dismissing the indictment.